UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT KARAGEUZIAN,<br><br>     **Plaintiff,**<br><br>  -against-<br><br>DANIEL CHETRIT, KENDALL JENNER, and APPLE, Inc.,<br><br>     **Defendants.** | ____Civ._____<br><br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

The Plaintiff, Robert Karageuzian (the "**Plaintiff**" or "**Karageuzian**"), by and through his counsel, Sam P. Israel, P.C., as and for his Complaint against the Defendants Daniel Chetrit ("**Chetrit**"), Kendall Jenner ("**Jenner**"), and Apple, Inc. ("**Apple,**" together with Chetrit and Jenner, the "**Defendants**"), hereby alleges as follows:

## PRELIMINARY STATEMENT

1. The Plaintiff is the founder of the Los Angeles-based artist collective known as PIZZABOYZZZ (the "**Collective**"). Since 2015, the Collective has been manufacturing clothing, decorative pins, and various other products, with Plaintiff's authorization and oversight, bearing the PIZZABOYZZZ trademark (the "**Mark**"), and selling and distributing them through interstate commerce to consumers located throughout the United States. Concurrently, the Plaintiff has been operating a highly popular Instagram account under his PIZZABOYZZZ brand to provide interactive entertainment to an international following of over 47,000 viewers.

2. This is an action to address a direct threat to the goodwill accorded the Plaintiff's Mark by the Defendants' sudden wide-scale commercial exploitation of the confusingly similar moniker, "PIZZABOYS", by means of a PIZZABOYS internet radio program and PIZZABOYS Instagram account promoting associated PIZZABOYS apparel directly

1

competitive with goods and services bearing the Plaintiff's prior in-use Mark. Thus, unbeknownst to the Plaintiff, in the fall of 2017, New York City resident Chetrit and Jenner filed two intent-to-use trademark applications under Chetrit's name for PIZZABOYS to be applied to clothing and an online radio show. On March 28, 2018, Chetrit and Jenner launched a competing Instagram account similar in style and substance to the Plaintiff's and now, through defendant Apple's online internet radio platform, Chetrit and Jenner have begun to broadcast "Pizza Boys Radio" to promote a Pizza Boys line of merchandise.

3.      Already, the internet is rife with complaints by customers who are confused by the nearly identical marks, particularly in view of the Defendants' efforts to specifically target the Plaintiff's base and exploit the Collective's unique themes, content and lifestyle with which the Mark has come to be associated. Yet, despite due demand therefor, all of the Defendants have refused to cease their unauthorized and infringing misconduct, nor have they assured the Plaintiff that they will not sell apparel bearing the infringing PIZZABOYS mark.

4.      Without judicial intervention, the consumer confusion only stands to intensify and cause the Plaintiff to sustain irreparable injury to the valuable national and international goodwill associated with the PIZZABOYZZZ mark and radically displace sales of PIZZABOYS goods and services via a well-funded media and marketing assault. Accordingly, the Plaintiff alleges claims for violations of the Lanham Act, Section 43(a) (15 U.S.C. § 1125(a)), New York General Business Law § 360-L, trademark infringement and unfair competition by misappropriation arising under New York common law, and he seeks critical declaratory as well as preliminary and permanent injunctive relief, together with monetary damages.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1332 and 1338(a) and (b), in that the claims arise under 15 U.S.C. § 121 and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). The Court has supplemental jurisdiction over the state law causes of action pursuant to 28 U.S.C. § 1367.

6.      The Court has general and specific personal jurisdiction over the Defendants by reason of their presence in New York State and/or their purposeful activities within the State, which have given rise to the Plaintiff's injuries, and/or their actions outside New York, which caused the Plaintiff to sustain injury here.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this Judicial District.

**PARTIES**

8.      The Plaintiff, Robert Karageuzian, is a natural person residing at 22406 Ladeene Ave, Torrence, CA 90505.

9.      Upon information and belief, Defendant Daniel Chetrit is a natural person residing at 512 Seventh Ave, New York, NY 10018.

10.     Upon information and belief, Defendant Kendall Jenner is a natural person residing at 14144 Beresford Rd, Beverly Hills, CA 90210.

11.     Upon information and belief, Apple, Inc. is a Delaware corporation with a principal place of business located at 1 Apple Park Way, Cupertino, CA 95014.

**FACTS**

*Background and the Formation of PIZZABOYZZZ*

12.     Robert Karageuzian is a prominent Los Angeles-based "street artist." In 2013, he formed a collective with other artists and chose as its moniker, "PIZZABOYZ" (later modified to "PIZZABOYZZZ") due to the idiosyncratic nature of its pairing with an artist collective and as an homage to the artists' shared love of pizza. The Collective developed a burgeoning following for their unique style of graffiti-inspired art pieces, often featuring a pizza motif. By 2014, Karageuzian's vision for a California street artist collective had gathered such momentum, that many of the Collective's followers expressed interest in purchasing pizza-themed stickers and other ephemera the artists

had created under Karageuzian's PIZZABOYZZZ brand. The PIZZABOYZZZ mark continued to garner exposure in Los Angeles and its status as a trademark susceptible to commercial exploitation became manifest in the early sales of the Collective's art and stickers.

13.     As the popularity of the Mark grew, so too did the demand for the Collective's PIZZABOYZZZ brand merchandise. By early 2015, with the Plaintiff's authorization and participation, the Collective was selling stickers and button pins to customers around the United States as well as in Puerto Rico and Japan. On February 19, 2015, Karageuzian launched an official Instagram account titled @pizzaboyzzz (the @ symbol is an Instagram identifier for an account's name) with the primary intention of using it as an entertainment vehicle for expanding awareness of the Collective's art and lifestyle, but also to promote and prepare for the debut of sales of clothing and other merchandise via a dedicated online store.

14.     On March 11, 2015, Karageuzian opened the PIZZABOYZZZ online store which can be accessed under two domains, www.pizzaboyzzz.com and pizzaboyzzz.bigcartel.com. The launch of the online store precipitated the expansion of PIZZABOYZZZ offerings, specifically into the clothing market.

15.     Since its opening, PIZZABOYZZZ merchandise has been consistently sold in interstate commerce by means of the online store, the first sale being made to an individual located in Virginia, and the reach of the goods bearing the Mark growing to encompass nearly every state, namely, Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin.

16.     Since at least September 22, 2015, PIZZABOYZZZ clothing has been sold in interstate commerce.

17.     Currently, the full spectrum of merchandise offered for sale under the PIZZABOYZZZ brand includes, without limitation, art prints, all manner of clothing, jewelry, backpacks, lapel pins, masks, button pins, cork boards, vinyl toys, key chains, scribes, patches, decals, stickers, and skateboard decks. The artists within the Collective create the designs, and the Plaintiff approves them and oversees the manufacture, sale, and distribution of products featuring those designs. Often, the products are emblazoned with the PIZZABOYZZZ mark or a second mark owned by the Plaintiff, the Collective's symbol, namely, a backwards capital "P" set against a lowercase "B."

18.     The Plaintiff has invested significant labor, time, and money to the online store, and the Collective continues to participate in festivals and conventions by selling its merchandise at dedicated booths. Due to PIZZABOYZZZ's growing fame, the organizers of such events regularly waive vendor fees for the Plaintiff and arrange for the Mark to appear as the headline in promotional materials intended to attract consumers.

19.     Although the Mark was initially associated with art and merchandise, the Plaintiff's Instagram account has generated a following of more than 47,000 fans and customers, broadening the Mark's reach into the entertainment sector. The account labels itself @pizzaboyzzz, using a lowercase spelling of the Mark, and features the brand's slogan and Plaintiff's other common law trademark, "In Crust We Trust" (the "**ICWT Mark**"), in the account's heading. In addition to being featured on the heading of the Plaintiff's Instagram account as a means of associating that service with the Plaintiff, the ICWT Mark has been used in promotional activities for the Collective's merchandise.

20.     The Instagram account uses the PIZZABOYZZZ mark to broadcast the Collective's distinct brand of "street art" over the internet for the entertainment of its audience by transmitting pizza-themed content produced by the Collective or its fans, and consisting of art, photographs, and videos. The account serves to keep current fans invested in the Collective's lifestyle and art themes while attracting new followers and consumers from the general public. Among its more than 47,000 regular fans are consumers of PIZZABOYZZZ media content and merchandise. The Plaintiff invests significant time and effort into creating entertaining content for the account, spending each day creating

5

or locating content to broadcast to his viewers. Additionally, the Plaintiff advertises his Instagram account by hiring Instagram promotors and by displaying the account's name on banners at the Collective's booth during festivals and conventions.

21.     The success of the Plaintiff's Instagram account as an entertainment source has occasioned many offers from businesses to advertise their own products or services on the Plaintiff's online platform. But the Plaintiff has, to date, refused these offers, choosing to maintain the credibility of PIZZABOYZZZ as a street art brand and his Instagram account as an entertainment enterprise, devoid of corporate advertisements.

22.     Prior to the Defendants' unauthorized use of PIZZABOYS, the @pizzaboyzzz Instagram account had continually enjoyed rapid, consistent growth, accumulating more than 20,000 followers (Instagram users who elect to be shown all content of a specified account) in its first year of operation.

23.     The sizable following of the Plaintiff's Instagram account mirrors the Collective's widespread sales of goods. PIZZABOYZZZ merchandise has been sold and shipped to all corners of the United States and throughout the world. Additionally, PIZZABOYZZZ enjoys the endorsements of professional skateboarders and the Collective regularly collaborates with well-known domestic and international artists to produce specialized merchandise. In short, PIZZABOYZZZ is a brand on the rise, having been painstakingly cultivated and promoted by the Plaintiff to attain a global following, popularity, and even fame.

### Chetrit and Jenner's First Public
### Use of PIZZABOYS

24.     In February 2016, Daniel Chetrit, a New York-based DJ, and Kendall Jenner, a model and reality television star, were pictured distributing boxes of "Joe's Pizza" in New York while wearing apparel bearing the word PIZZABOYS. Later that same spring, the pair had a VIP booth at the Coachella music festival, which was topped with a "PIZZA BOYS" banner and featured stickers also bearing the word PIZZABOYS.

25.     The dissemination of these photos to the general public was accelerated by Chetrit and Jenner's celebrity status, and the widespread awareness of the pair's use of the PIZZABOYS mark sparked outrage and confusion among consumers. In fact, even the official Instagram account of Joe's Pizza, which has more than 14,000 followers, posted a picture of Jenner wearing a "PIZZA BOYS" shirt and linked this picture to the Plaintiff's Instagram account (see, "@pizzaboyzzz" in the photograph below), signaling to at least those 14,000 Instagram users that Jenner's use of PIZZABOYS was, in fact, sponsored by or associated with the Plaintiff and his Collective.


(This is an image of Jenner taken from Joe's Pizza's Instagram account)

26.     For the next two years, Chetrit and Jenner refrained from publicly using PIZZABOYS, leading the Plaintiff to believe that the pair's non-commercial use was an isolated event not to be repeated. But fans of Jenner and Chetrit inevitably came upon the @pizzaboyzzz Instagram account thinking that it belonged to Chetrit or Jenner, only to learn that it was not associated with them. Because the fans believed PIZZABOYZZZ to be owned by Jenner, they lashed out at the Plaintiff and created a record of seeming consumer dissatisfaction.

27.     Even after the confusion was made known to Jenner by Instagram users who informed her through messages linked to her Instagram account or comments left on her own Instagram photographs that she was misappropriating the PIZZABOYZZZ mark, Jenner did nothing to attempt to cure the confusion, instead refraining from commenting upon it and allowing the perceived association between her and PIZZABOYZZZ to continue unabated.

28.     Undoubtedly, Jenner and Chetrit were aware of the Plaintiff's valid, albeit unregistered mark, and intentionally failed to dispel the confusion, hoping to appropriate the Plaintiff's Mark and goodwill.

29.     Upon information and belief, Chetrit, Jenner or persons acting at their direction managed to deactivate the PIZZABOYZZZ Instagram account causing significant damage to the Plaintiff. Only after painstaking efforts was the Plaintiff able to recover this account and its followers.

**30.**     Chetrit and Jenner next partnered with Apple to launch the Defendants' radio show.

### The Defendants' Instagram Account and Radio Show

31.     Upon information and belief, on March 28, 2018, Chetrit, Jenner, and Apple created an Instagram account called @pizzaboys, also using a lowercase spelling of its title, featuring the mysterious message, "COMING SOON," and displaying a photo of Jenner and her sister, Kylie Jenner, in a pool holding pizza toys.

32.     The @pizzaboys Instagram account featured as its heading, the phrase "IN CRUST WE TRUST," the Plaintiff's trademarked slogan used in the very heading of the @pizzaboyzzz Instagram account and to promote PIZZABOYZZZ merchandise and services. The ICWT Mark was apparently misappropriated by the Defendants to further suggest a connection to the Plaintiff and the Mark's goodwill.



(Defendants' Instagram account at launch and Plaintiff's account, as viewed on a mobile device)

33.    Upon information and belief, the Defendants knew of the existence and use of the ICWT Mark and intentionally co-opted the Plaintiff's ICWT Mark.

34.    Fans and entertainment news sources speculated on what the new @pizzaboys Instagram page was promoting, and Instagram users again flocked to the Plaintiff's account upon the mistaken belief that it belonged to Chetrit and Jenner. This belief was bolstered by the Defendants' ostensible secrecy and blatant exploitation of the Plaintiff's Instagram account to build intrigue and a following for their copycat brand.

35.    Further, upon searching the USPTO website, the Plaintiff recently learned that on October 18, 2017 and November 8, 2017, Chetrit filed intent-to-use trademark applications for registration of the PIZZABOYS mark in the classes of apparel and entertainment services. These applications were filed in New York.

36.    Upon information and belief, on April 12, 2018, Chetrit and Jenner posted three photos to their Instagram account announcing the debut of a radio show hosted by Chetrit and Jenner to be broadcast on the Beats 1 radio station of the Apple Music platform.

37.    Upon information and belief, Chetrit and Jenner are partners in PIZZABOYS and have consistently promoted it as joint venture, though only Chetrit's name is on the trademark applications.

9

38.     Apple released the first episode of "Pizza Boys Radio" on April 13, 2018. In the episode, Chetrit and Jenner professed their own uncertainty of what PIZZABOYS represented and asked their guests to speak on the matter. While Jenner "didn't really know what [PIZZABOYS] was until today kind of," a "guest" defined PIZZABOYS as a "collective," another defined it as a "lifestyle," and Chetrit defined it as "the celebration of all of our friends." All of their "definitions" mimicked the Plaintiff's Instagram account's presentation of PIZZABOYZZZ as an "ART/LIFESTYLE/MOVEMENT" and as a "Crew Collective."

39.     Moreover, just as the Plaintiff is curating art, photography, and video-art for publication on the @pizzaboyzzz Instagram account, the Defendants use the radio show to curate pizza-themed entertainment for their listeners.

40.     During the radio show, the Chetrit and Jenner expressed their intention to release a new episode of the program every month.

41.     Chetrit, Jenner, and their guests also spoke extensively about PIZZABOYS merchandise. Chetrit, in attempting to define PIZZABOYS, said "we make merch," and commented on one guest's PIZZABOYS hoodie. Jenner told another guest that the she and Chetrit had "a bunch" of hoodies. That guest later revealed that Chetrit and Jenner also had PIZZABOYS bucket hats.

42.     Upon information and belief, the Defendants currently have PIZZABOYS apparel in stock and intend to make it available for sale.

43.     In the days following the first episode of Pizza Boys Radio, Chetrit and Jenner attended the Coachella 2018 music festival ("**Coachella 2018**"), again setting up a PIZZABOYS booth, this time sponsored by Apple.

44.     Upon information and belief, apparel bearing the PIZZABOYS mark was worn by Chetrit, Jenner and their associated agents during the festival to induce anticipation for the inevitable sale of PIZZABOYS merchandise.

45.     Confusion among the fans of the Defendants and the Plaintiff ensued, with Instagram users asking who the real "pizza boys" were.



(Instagram users commenting on the @pizzaboys Instagram account)

46.     Upon information and belief, Zane Lowe is a DJ on the Apple Music platform and the creative director of Apple's Beats 1 radio station on which the Defendants' radio show aired. To promote the first episode of the Defendants' radio show, Lowe posted a photograph of Chetrit and Jenner behind the words "PIZZA BOYS RADIO" on his own Instagram page. In that picture, the station's creative director "tagged" (indicated that a specified account was featured in the picture) the Instagram accounts of both Jenner and PIZZABOYZZZ. Later, Lowe again tagged PIZZABOYZZZ in an Instagram photograph from Coachella 2018, though only PIZZABOYS was present at the event. Lowe's association of PIZZABOYZZZ with the Defendants' radio show was displayed to the 156,000 followers of his Instagram account, undoubtedly causing them to associate the Plaintiff and the Defendants together.

 

(Images from Zane Lowe's Instagram account)

47.     Meanwhile, members of the Plaintiff's Collective wearing PIZZABOYZZZ apparel at Coachella 2018 were approached by attendees seeking to ascertain whether they were associated with the Defendants.

48.     After the radio show aired, the Plaintiff was mistakenly associated with the Defendants at the In-Dee Market event in Hollywood while setting up a booth that clearly bore the PIZZABOYZZZ mark. The potential customers left in irritation after learning that the Plaintiff was not who they assumed him to be.

49.     Having experienced false associations with the Defendants and fearing that the Defendants' future releases of their radio show and the inventible sale of PIZZABOYS merchandise would harm his brand, on April 16, 2018, the Plaintiff issued a cease and desist letter (the "**April 16 Demand**") to the Defendants' respective counsel.

50.     Among other things, the April 16 Demand required the following:

> [T]o ensure that your clients cease and desist all unauthorized usage of the MARK and/or of any mark confusingly similar to PIZZA BOYZZZ on or in connection with apparel, accessories and related products, advertisements, or services, including radio programs, demand is hereby made that your

respective clients certify that they and any and all affiliated entities or agents, acting in concert with them, will:

Immediately cease all use of the MARK or any mark confusingly similar to PIZZA BOYZZZ in connection with the foregoing goods and services;

Rescind and refrain from any further advertising bearing the MARK or any mark confusingly similar to PIZZA BOYZZZ in connection with such goods and services, and;

Withdraw Chetrit's trademark applications (to which we are poised to file notices of opposition, together with registration applications for our client's use-preceding MARK).

51.     The Defendants refused to comply with the April 16 Demand.

## COUNT I
## VIOLATION OF SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a)) BY INFRINGEMENTS OF THE MARK

52.     The Plaintiff repeats and realleges each of the allegations set forth above as though they are fully set forth herein.

53.     15 U.S.C. § 1125(a) provides, in pertinent part, as follows:

(1)     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false and misleading representation of fact, which –

(A)     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person…shall be liable in a civil action by any person who believes that he or she is or is likely to be damages by such act.

54.     Since March 11, 2015, PIZZABOYZZZ merchandise has been consistently sold in interstate commerce by means of the Plaintiff's online store, including to consumers in

13

Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin.

55.    Since at least September 22, 2015, PIZZABOYZZZ has been selling apparel in interstate commerce.

56.    Since February 19, 2015, the Plaintiff has used the @pizzaboyzzz Instagram account as an entertainment vehicle to publicly broadcast content to viewers.

57.    The Defendants' use of the PIZZABOYS mark for apparel and entertainment purposes and for the production and sale of other merchandise, has caused consumer confusion, and the Defendants' continued use of the infringing mark is likely to cause further confusion, mistake, and/or deceive as to an affiliation, connection, or association between the Defendants' radio program and apparel and the Plaintiff's use of the PIZZABOYZZZ mark, and/or suggest that the Plaintiff has sponsored or approved of the Defendants' merchandise or activities.

58.    The Defendants use their confusingly similar mark with full knowledge and/or reckless disregard for the Plaintiff's rights to use the PIZZABOYZZZ mark in connection with the sale of the Collective's merchandise and the operation of Plaintiff's Instagram account.

59.    Upon information and belief, Defendant Apple has partnered with Jenner and Chetrit to produce PIZZABOYS merchandise and manufactured a booth at Coachella 2018 to promote PIZZABOYS and its Beats 1 radio station. Further, Apple has advertised and distributed the PIZZABOYS radio show over its Apple Music platform.

60.    The Defendants' actions have and will continue to cause confusion among consumers.

61.     The Defendants' aforementioned acts constitute trademark infringement, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a).

62.     If the Defendants continue to use the PIZZABOYS mark, the Plaintiff will suffer irreparable injury for which he has no adequate remedy at law.

63.     As a result of the foregoing, the Defendants should be held liable for damages in an amount to be determined at trial and should be preliminarily and permanently enjoined from any further use of the PIZZABOYS mark in connection with the advertising or production of radio programs or the manufacture, distribution, or sale of products bearing the PIZZABOYS mark.


**COUNT II**
**VIOLATION OF SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a)) BY INFRINGEMENTS OF THE ICWT MARK**

64.     The Plaintiff repeats and realleges each of the allegations set forth above as though they are fully set forth herein.

65.     Since 2016, the Plaintiff has used the ICWT Mark in the marketing of PIZZABOYZZZ products and on the heading of the PIZZABOYZZZ Instagram account.

66.     The Defendants' initial heading on the PIZZABOYS Instagram account featured a word for word copy of the Plaintiff's ICWT Mark.

67.     Upon information and belief, the Defendants intend to use the phrase "IN CRUST WE TRUST" on their merchandise and for the promotion of their radio show.

68.     The Defendants' use of the ICWT Mark has caused consumer confusion, and its continued use in the hands of the Defendants is likely to cause further confusion, mistake, and/or deceive as to an affiliation, connection, or association between the Defendants' radio program and merchandise and the Plaintiff's use of the ICWT Mark, and/or suggest that the Plaintiff has sponsored or approved of the Defendants' merchandise or activities.

69.     The Defendants use the ICWT Mark with full knowledge and/or reckless disregard for the Plaintiff's associated rights and entitlements to use the ICWT Mark in

connection with the sale of the Collective's merchandise and the operation of Plaintiff's Instagram account.

70.     The Defendants' actions, which have and will continue to cause confusion among consumers, constitute trademark infringement, false designation of origin, and unfair competition in violation of 15 U.S.C. § 1125(a).

71.     If the Defendants continue to use the ICWT Mark, the Plaintiff will suffer irreparable injury for which he has no adequate remedy at law.

72.     As a result of the foregoing, the Defendants should be held liable for damages in an amount to be determined at trial and should be preliminarily and permanently enjoined from any further use of the ICWT Mark in connection with the advertising or production of radio programs or the manufacture, distribution, or sale of products bearing the ICWT Mark.

## COUNT III
## DILUTION OF THE MARK
### (NY GEN. BUS. LAW § 360-l)

73.     The Plaintiff repeats and realleges each of the allegations set forth above as though they are fully set forth herein.

74.     New York General Business Law § 360-l provides as follows:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

75.     The PIZZABOYZZZ Mark has a strong distinctive quality and is neither generic nor descriptive.

76.     The Defendants' unauthorized use, as set forth herein, of the mark confusingly similar to PIZZABOYZZZ is likely to dilute the Mark's distinctive quality.

77.     The goodwill associated with the PIZZABOYZZZ mark is likely to be tarnished by the association of the Mark with PIZZABOYS and Defendants.

78.     Upon information and belief, Defendants knew that PIZZABOYZZZ was a valid, protectable mark prior to Chetrit and Jenner filing their trademark applications, the creation of the Instagram account with Apple, and the debut of their radio show on Apple's radio station.

79.     Upon information and belief, Defendant Apple has partnered with Jenner and Chetrit to produce PIZZABOYS merchandise and manufactured a booth at Coachella 2018 to promote PIZZABOYS and its Beats 1 radio station. Further, Apple has advertised and distributed the PIZZABOYS radio show over its Apple Music platform.

80.     The Defendants' acts have caused the Plaintiff to suffer damages and threaten to cause irreparable damage to the Plaintiff unless permanently restrained by this Court.

**COUNT IV**
**DILUTION OF THE ICWT MARK**
**(NY GEN. BUS. LAW § 360-l)**

81.     The Plaintiff repeats and realleges each of the allegations set forth above as though they are fully set forth herein.

82.     The IN CRUST WE TRUST mark has a strong distinctive quality and is neither generic nor descriptive.

83.     The Defendants' unauthorized use as set forth herein of the Plaintiff's trademark is likely to dilute its distinctive quality.

84.     The goodwill associated with the ICWT Mark is likely to be tarnished by the association of the ICWT Mark with PIZZABOYS and Defendants.

85.     Upon information and belief, Defendants knew that IN CRUST WE TRUST was a valid, protectable mark prior to Chetrit and Jenner filing their trademark applications, the creation of the Defendants' Instagram account, and the debut of their radio show on Apple's radio station.

86.     The Defendants' acts have caused the Plaintiff to suffer damages and threaten to cause irreparable damage to the Plaintiff unless permanently restrained by this Court.

## COUNT V
## COMMON LAW TRADEMARK INFRINGEMENT OF THE MARK

87.     The Plaintiff repeats and realleges each of the allegations set forth above as though they were fully set forth herein.

88.     As described herein, the Plaintiff's use of the PIZZABOYZZZ Mark in interstate commerce predates the Defendants' use of the PIZZABOYS mark.

89.     By placing the word PIZZABOYS on their Instagram account, advertisements, festival booths, and merchandise, and by using an identical slogan to that of the Collective's, the Defendants have caused consumer confusion and their continued use of PIZZABOYS is likely to extend this trend.

90.     Upon information and belief, Defendant Apple has partnered with Jenner and Chetrit to produce PIZZABOYS merchandise and manufactured a booth at Coachella 2018 to promote PIZZABOYS and its Beats 1 radio station. Further, Apple has advertised and distributed the PIZZABOYS radio show over its Apple Music platform.

91.     Therefore, the acts of the Defendants constitute trademark infringement and the Plaintiff is entitled to recover damages in an amount to be ascertained at trial together with preliminary and permanent injunctive relief.

## COUNT VI
## COMMON LAW TRADEMARK INFRINGEMENT OF THE ICWT MARK

92.     The Plaintiff repeats and realleges each of the allegations set forth above as though they were fully set forth herein.

93.     As described herein, the Plaintiff's use of the IN CRUST WE TRUST mark in interstate commerce predates the Defendants' use of the same mark.

94.     By placing the ICWT Mark on their Instagram account, the Defendants have caused consumer confusion and their continued use of the Plaintiff's mark is likely to extend this trend.

95.     Upon information and belief, Defendant Apple has partnered with Jenner and Chetrit to produce PIZZABOYS clothing and merchandise bearing the ICWT Mark.

96.     Therefore, the acts of the Defendants constitute trademark infringement and the Plaintiff is entitled to recover damages in an amount to be ascertained at trial together with preliminary and permanent injunctive relief.

**COUNT VII**
**COMMON LAW UNFAIR COMPETITION**
**BY MISAPPROPRIATION OF THE MARK**

97.     The Plaintiff repeats and realleges each of the allegations set forth above as though they were fully set forth herein.

98.     The Defendants were fully aware of the Plaintiff's Mark when Chetrit and Jenner filed their trademark applications, created the Defendants' Instagram account, and debuted their radio show on Apple's radio station. Still, the Defendants decided to use the confusingly similar PIZZABOYS mark in connection with a radio show and associated merchandise.

99.     The Defendants' conduct as described herein was and continues to be deliberate, knowing, and willful, and is intended to benefit from the Plaintiff's creativity and artistic skill to his detriment and to the Defendants' own economic and commercial benefit.

100.    The Defendants have engaged in such acts fully aware that they are causing the public to be confused and deceived regarding the source, nature, approval, sponsorship, endorsement, and/or authorization of goods and services bearing the PIZZABOYS mark.

101.    Accordingly, the acts of the Defendants constitute unfair competition by misappropriation and the Plaintiff is entitled to recover damages in an amount to be ascertained at trial together with preliminary and permanent injunctive relief.

**COUNT VIII**
**COMMON LAW UNFAIR COMPETITION**
**BY MISAPPROPRIATION OF THE ICWT MARK**

102.    The Plaintiff repeats and realleges each of the allegations set forth above as though they were fully set forth herein.

103.    The Defendants were fully aware of the Plaintiff's ICWT Mark when Chetrit and Jenner filed their trademark applications, they created the Defendants' Instagram

account, and debuted their radio show on Apple's radio station. Still, the Defendants copied Plaintiff's ICWT Mark and featured it on their public Instagram account.

104.    The Defendants' conduct as described herein was and continues to be deliberate, knowing, and willful, and is intended to benefit from the Plaintiff's creativity and artistic skill to his detriment and to the Defendants' own economic and commercial benefit.

105.    The Defendants have engaged in such acts fully aware that they are causing the public to be confused and deceived regarding the source, nature, approval, sponsorship, endorsement, and/or authorization of goods and services bearing the ICWT Mark.

106.    Accordingly, the acts of the Defendants constitute unfair competition by misappropriation and the Plaintiff is entitled to recover damages in an amount to be ascertained at trial together with preliminary and permanent injunctive relief.

## COUNT IX
## FOR A DECLARATORY JUDGMENT (28 U.S.C. § 2201)

107.    The Plaintiff repeats and realleges each of the allegations set forth above as though they were fully set forth herein.

108.    The Declaratory Judgment Act, 28 U.S.C. § 2201, empowers this Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" so long as the request derives from a "case of actual controversy."

109.    Since March 11, 2015, PIZZABOYZZZ merchandise has been consistently sold in interstate commerce by means of the Plaintiff's online store, including to consumers in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wisconsin.

110.    Since at least September 22, 2015, PIZZABOYZZZ has been selling apparel in interstate commerce.

111.    Since February 19, 2015, the Plaintiff has used the @pizzaboyzzz Instagram account as an entertainment vehicle to publicly broadcast content to viewers.

112.    Since 2016, the Plaintiff has used the ICWT Mark in the marketing of PIZZABOYZZZ products and on the heading of the PIZZABOYZZZ Instagram account.

113.    Upon searching the USPTO website, the Plaintiff recently learned that on October 18, 2017 and November 8, 2017, Chetrit filed intent-to-use trademark applications for registration of the PIZZABOYS mark in the apparel and entertainment classes.

114.    On March 28, 2018, Chetrit and Jenner created an Instagram account called @pizzaboys, also using a lowercase spelling of its title, featuring the mysterious message, "COMING SOON," and displaying a photo of Jenner and her sister, Kylie Jenner, in a pool holding pizza toys.

115.    On April 12, 2018, the Defendants posted three photos to their Instagram account announcing the debut of a radio program hosted by Chetrit and Jenner to be broadcast on the Beats 1 radio station of the Apple Music platform.

116.    Apple released the first episode of "Pizza Boys Radio" on April 13, 2018, during which Chetrit, Jenner, and their guests also spoke extensively about PIZZABOYS merchandise. Chetrit, in attempting to define PIZZABOYS, said "we make merch," and commented on one guest's PIZZABOYS hoodie. Jenner told another guest that the she and Chetrit had "a bunch" of hoodies. That guest later revealed that the Chetrit and Jenner also had PIZZABOYS bucket hats.

117.    The Defendants' use of PIZZABOYS for apparel and entertainment purposes and for the production and intended sale of other merchandise, has caused consumer confusion, and the Defendants' continued use of the infringing mark is likely to cause further confusion, mistake, and/or deceive as to an affiliation, connection, or association between the Defendants' radio program and apparel and the Plaintiff's use of the PIZZABOYZZZ mark, and/or suggest that the Plaintiff has sponsored or approved of the Defendants' merchandise or activities.

118.     Having experienced false associations with the Defendants and fearing that the Defendants' future releases of their radio show and the inevitable sale of PIZZABOYS merchandise would harm his brand, on April 16, 2018, the Plaintiff issued a cease and desist letter to the Defendants' respective counsel.

119.     Among other things, the April 16 Demand provided as follows:

> [T]o ensure that your clients cease and desist all unauthorized usage of the MARK and/or of any mark confusingly similar to PIZZA BOYZZZ on or in connection with apparel, accessories and related products, advertisements, or services, including radio programs, demand is hereby made that your respective clients certify that they and any and all affiliated entities or agents, acting in concert with them, will:
>
> Immediately cease all use of the MARK or any mark confusingly similar to PIZZA BOYZZZ in connection with the foregoing goods and services;
>
> Rescind and refrain from any further advertising bearing the MARK or any mark confusingly similar to PIZZA BOYZZZ in connection with such goods and services, and;
>
> Withdraw Chetrit's trademark applications (to which we are poised to file notices of opposition, together with registration applications for our client's use-preceding MARK).

120.     The Defendants refused to comply with the April 16 Demand.

121.     The Court should declare that the Plaintiff has common-law rights in his PIZZABOYZZZ and IN CRUST WE TRUST trademarks and that the Defendants have no such entitlements as matters of law.

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter judgment against the Defendants as follows:

1.    ON COUNT I:
   a.   A preliminary and permanent injunction enjoining, restraining, and prohibiting the Defendants, their agents, servants, employees, officers, directors, successors and assigns, and all persons, firms, and corporations acting in concert or participation with the Defendants or on the Defendants' behalf, from:

   i.   Using the Plaintiff's PIZZABOYZZZ trademark or any confusingly similar mark, such as PIZZABOYS, to promote

and/or advertise any merchandise or entertainment services, such as a radio program;

    ii.  Producing or distributing any entertainment services, such as a radio program, under the Plaintiff's PIZZABOYZZZ trademark or a confusingly similar mark;

    iii.  Producing, selling, and/or shipping merchandise under or bearing the Plaintiff's PIZZABOYZZZ trademark or a confusingly similar mark;

b. Ordering an award of actual damages suffered by the Plaintiff as a result of the Defendants' infringement of the PIZZABOYZZZ trademark in an amount to be determined at trial plus any profits of the Defendants which are attributable to such infringement;

c. Ordering an award of damages to the Plaintiff in the amount of any gain, profit, and advantage derived by the Defendants as a result of the Defendants' infringement of the Plaintiff's trademark;

d. Ordering an award of costs and reasonable attorneys' fees to the Plaintiff;

2. <u>ON COUNT II:</u>
    a. A preliminary and permanent injunction enjoining, restraining, and prohibiting the Defendants, their agents, servants, employees, officers, directors, successors and assigns, and all persons, firms, and corporations acting in concert or participation with the Defendants or on the Defendants' behalf, from:

    i.  Using the Plaintiff's IN CRUST WE TRUST trademark or any confusingly similar mark, to promote and/or advertise any merchandise or entertainment services, such as a radio program;

    ii.  Producing or distributing any entertainment services, such as a radio program, under the Plaintiff's IN CRUST WE TRUST trademark or a confusingly similar mark;

    iii.  Producing, selling, and/or shipping merchandise under or bearing the Plaintiff's IN CRUST WE TRUST trademark or a confusingly similar mark;

b. Ordering an award of actual damages suffered by the Plaintiff as a result of the Defendants' infringement of the IN CRUST WE TRUST trademark

23

in an amount to be determined at trial plus any profits of the Defendants which are attributable to such infringement;

c.  Ordering an award of damages to the Plaintiff in the amount of any gain, profit, and advantage derived by the Defendants as a result of the Defendants' infringement of the Plaintiff's trademark;

d.  Ordering an award of costs and reasonable attorneys' fees to the Plaintiff;

3.  <u>ON COUNT III</u>

a.  A preliminary and permanent injunction enjoining, restraining, and prohibiting the Defendants, their agents, servants, employees, officers, directors, successors and assigns, and all persons, firms, and corporations acting in concert or participation with the Defendants or on the Defendants' behalf, from:

   i.  Using the Plaintiff's PIZZABOYZZZ trademark or any confusingly similar mark, such as PIZZABOYS, to promote and/or advertise any merchandise or entertainment services, such as a radio program;

   ii.  Producing or distributing any entertainment services, such as a radio program, under the Plaintiff's PIZZABOYZZZ trademark or a confusingly similar mark;

   iii.  Producing, selling, and/or shipping merchandise under or bearing the Plaintiff's PIZZABOYZZZ trademark or a confusingly similar mark;

4.  <u>ON COUNT IV:</u>

a.  A preliminary and permanent injunction enjoining, restraining, and prohibiting the Defendants, their agents, servants, employees, officers, directors, successors and assigns, and all persons, firms, and corporations acting in concert or participation with the Defendants or on the Defendants' behalf, from:

   i.  Using the Plaintiff's IN CRUST WE TRUST trademark or any confusingly similar mark, to promote and/or advertise any merchandise or entertainment services, such as a radio program;

24

ii. Producing or distributing any entertainment services, such as a radio program, under the Plaintiff's IN CRUST WE TRUST trademark or a confusingly similar mark;

iii. Producing, selling, and/or shipping merchandise under or bearing the Plaintiff's IN CRUST WE TRUST trademark or a confusingly similar mark;

5.   ON COUNT V:

a. A preliminary and permanent injunction enjoining, restraining, and prohibiting the Defendants, their agents, servants, employees, officers, directors, successors and assigns, and all persons, firms, and corporations acting in concert or participation with the Defendants or on the Defendants' behalf, from:

i. Using the Plaintiff's PIZZABOYZZZ trademark or any confusingly similar mark, such as PIZZABOYS, to promote and/or advertise any merchandise or entertainment services, such as a radio program;

ii. Producing or distributing any entertainment services, such as a radio program, under the Plaintiff's PIZZABOYZZZ trademark or a confusingly similar mark;

iii. Producing, selling, and/or shipping merchandise under or bearing the Plaintiff's PIZZABOYZZZ trademark or a confusingly similar mark;

6.   ON COUNT VI:

a. A preliminary and permanent injunction enjoining, restraining, and prohibiting the Defendants, their agents, servants, employees, officers, directors, successors and assigns, and all persons, firms, and corporations acting in concert or participation with the Defendants or on the Defendants' behalf, from:

i. Using the Plaintiff's IN CRUST WE TRUST trademark or any confusingly similar mark, to promote and/or advertise any merchandise or entertainment services, such as a radio program;

ii. Producing or distributing any entertainment services, such as a radio program, under the Plaintiff's IN CRUST WE TRUST trademark or a confusingly similar mark;

        iii. Producing, selling, and/or shipping merchandise under or bearing the Plaintiff's IN CRUST WE TRUST trademark or a confusingly similar mark;

7.   <u>ON COUNT VII:</u>

    a. A preliminary and permanent injunction enjoining, restraining, and prohibiting the Defendants, their agents, servants, employees, officers, directors, successors and assigns, and all persons, firms, and corporations acting in concert or participation with the Defendants or on the Defendants' behalf, from:

        i. Using the Plaintiff's PIZZABOYZZZ trademark or any confusingly similar mark, such as PIZZABOYS, to promote and/or advertise any merchandise or entertainment services, such as a radio program;

        ii. Producing or distributing any entertainment services, such as a radio program, under the Plaintiff's PIZZABOYZZZ trademark or a confusingly similar mark;

        iii. Producing, selling, and/or shipping merchandise under or bearing the Plaintiff's PIZZABOYZZZ trademark or a confusingly similar mark;

    b. Ordering an award of actual damages suffered by the Plaintiff as a result of the Defendants' infringement of the PIZZABOYZZZ trademark in an amount to be determined at trial plus any profits of the Defendants which are attributable to such infringement;

8.   <u>ON COUNT VIII:</u>

    a. A preliminary and permanent injunction enjoining, restraining, and prohibiting the Defendants, their agents, servants, employees, officers, directors, successors and assigns, and all persons, firms, and corporations acting in concert or participation with the Defendants or on the Defendants' behalf, from:

        i. Using the Plaintiff's IN CRUST WE TRUST trademark or any confusingly similar mark, to promote and/or advertise any merchandise or entertainment services, such as a radio program;

        ii. Producing or distributing any entertainment services, such as a radio program, under the Plaintiff's IN CRUST WE TRUST trademark or a confusingly similar mark;

26

        iii.  Producing, selling, and/or shipping merchandise under or bearing the Plaintiff's IN CRUST WE TRUST trademark or a confusingly similar mark;

    b.  Ordering an award of actual damages suffered by the Plaintiff as a result of the Defendants' infringement of the IN CRUST WE TRUST trademark in an amount to be determined at trial plus any profits of the Defendants which are attributable to such infringement;

9.    <u>ON COUNT IX</u>: Declaring that the Plaintiff has superior common law rights in his PIZZABOYZZZ and IN CRUST WE TRUST trademarks and that the Defendants have no such entitlements as matters of law; and

10.    Ordering an award of such other and further relief as the Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Dated: New York, New York
    May 3, 2018

                              Respectfully submitted,

                              SAM P. ISRAEL, P.C.

By:    _____

                              Sam P. Israel, Esq. (SPI0270)
                              David Hrovat, Esq.
                              180 Maiden Lane, 6th Floor
                              New York, New York 10038
                              (646) 787-9880
                              *Attorneys for Plaintiff,*
                              *Robert Karageuzian*